UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-14005-CIV-MARRA

DEIRDRE LEVESQUE and TIMOTHY
LEVESQUE,

    Plaintiffs,

vs.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

    Defendant,
_____/

**OPINION AND ORDER DENYING GEICO'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION TO STAY AND GEICO'S MOTION TO CONTINUE TRIAL AND STAY REMAINING PRETRIAL DEADLINES**

This matter is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion to Dismiss or in the Alternative Motion to Stay (DE 13) and GEICO's Motion to Continue Trial and Stay Remaining Pretrial Deadlines (DE 26). For the following reasons, the Court denies both motions.

**I. Background and Procedural History**

On August 2, 2011, Plaintiff Deirdre Levesque was involved in an automobile accident with an uninsured motorist, leaving Levesque with significant injuries. (DE 1-2 ¶¶ 4–6, 8.) Defendant GEICO insured Levesque under a policy that provided $100,000 in uninsured motorist ("UM") coverage. (DE 1-2 ¶¶ 9, 11.) Because GEICO allegedly failed to tender its applicable UM coverage limits within 60 days of being served with a Civil Remedy Notice of Insurer Violation, Levesque and her husband, Plaintiff Timothy Levesque, sued GEICO in a state court proceeding for damages under

1

the policy (the "coverage action"). (DE 1-2 ¶¶ 12–16.) A trial was scheduled in the coverage action, which would have determined the full extent of Plaintiffs' damages caused by the uninsured motorist's alleged negligence. Before the scheduled trial, GEICO moved the court for entry of a final judgment. (DE1-2 ¶ 40.)

In its motion, GEICO argued that because it "admitted that Plaintiffs are entitled to judgment in the amount of the UM policy limits, there is no further justiciable controversy between the parties and final judgment must be entered." (DE 17-1 at 4.)[1] In support of its motion for entry of a judgment, and in order to assuage any concerns the court might have about prejudicing a future claim for such damages, GEICO assured the court that under Florida law such a result "would in no way impede [an insured] from pursuing a bad faith claim against [a UM insurer], as a confessed judgment in the UM action would provide a sufficient basis for [an insured] to sue [its UM insurer] for bad faith." (DE 17-1 at 7.) GEICO explained that "the finder of fact in the subsequent lawsuit for bad faith" would be "entitled to determine the amount of the damages in that action." (DE 17-1 at 8.) Based on GEICO's motion, the court entered a final judgment against GEICO in the amount of the $100,000 policy limits. (DE 1-2 ¶¶ 40–41.) Thus, GEICO deprived Plaintiffs of the ability to have the amount of damages they sustained in excess of the policy limits determined in the coverage action.

After obtaining the final judgment against GEICO in the coverage action, Plaintiffs filed this

---

[1] When deciding a motion to dismiss for failure to state a claim, a court may consider judicially noticed matters without converting the motion to one for summary judgment. *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322,(2007). A court may take judicial notice of orders and other documents filed in another court, but not of the truth of the matters asserted therein. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Accordingly, the Court takes judicial notice of GEICO's arguments in its motion for entry of final judgment in the state-court coverage action.

statutory "bad faith" action against GEICO under section 624.155, Florida statutes. (DE 1-2.) Among other damages, Plaintiffs seek the total amount of damages sustained as a result of the August 2, 2011 car accident, including any amount in excess of the policy limits. (DE 1-2 at 17–18.) Plaintiffs assert that the full value of their claims "greatly exceeded" the $100,000 policy limits. (DE 1-2 ¶ 11.) In response, GEICO filed the present motion to dismiss or in the alternative to stay. (DE 13.)

GEICO's motion to dismiss argues that Plaintiffs' section 624.155 action cannot be maintained because, according to GEICO, as a condition precedent to such an action "Plaintiffs are required to establish the total amount of damages in the underlying suit for UM benefits." (DE 13 at 2.) Though GEICO moves to dismiss "without prejudice," it is clear that GEICO seeks a result that would forever bar Plaintiffs from prosecuting their section 624.155 claim. GEICO succeeded in arguing that Plaintiffs could not obtain a determination of their total damages in the coverage action because "no further justiciable controversy" existed once GEICO admitted it was liable for the policy limits, and that instead Plaintiffs had to prove their damages in a subsequent section 624.155 action. Now that the coverage case is closed, GEICO argues that Plaintiffs cannot bring their section 624.155 claim because they should have obtained a determination of their damages in the prior coverage action. As explained below, GEICO contention must be rejected.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

3

conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### III. Discussion

#### A. GEICO's Motion to Dismiss

Florida's civil remedy statute provides a cause of action, often referred to as a "bad faith" action, for any person who is damaged by an insurer's violation of certain enumerated duties. Fla. Stat. § 624.155 (2015). In turn, Florida's UM statute, which governs UM claims against insurers, provides that in a section 624.155 action against a UM insurer a plaintiff may recover her full amount of damages, including those caused by the uninsured motorist rather than the insurer, and even in excess of the policy limits:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 *shall include the total amount of the claimant's damages, including the amount in excess of the policy limits*, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of a law of this state. *The total amount of the claimant's damages is recoverable whether caused by*

>  *an insurer or by a third-party tortfeasor.*

Fla. Stat. § 627.727(10) (2015) (emphasis added).

Under Florida law, an injured insured may pursue a coverage claim against her UM carrier without having to first resolve the tort claim against the uninsured motorist. *Neff v. Prop. & Cas. Ins. Co. of Hartford*, 133 So. 3d 530, 532 (Fla. Dist. Ct. App. 2013). As part of proving coverage, the insured must prove the liability of the uninsured tortfeasor. In such a case, the UM carrier "stands in the shoes" of the uninsured motorist. *Diaz-Hernandez v. State Farm Fire & Cas. Co.*, 19 So. 3d 996, 999 (Fla. Dist. Ct. App. 2009). Thus, at trial in a UM coverage action, if the jury returns a verdict for the plaintiff, it is for the full amount of the plaintiff's damages arising from the car accident. If the verdict is in excess of the policy limits, then the trial court must grant the UM insurer's motion to limit the judgment to the policy limits because the only claim is for coverage under the policy. *Nationwide Mut. Fire Ins. Co. v. Voigt*, 971 So. 2d 239, 242 (Fla. Dist. Ct. App. 2008).

A section 624.155 action against an insurer for its bad fath failure to settle a claim cannot proceed simultaneously with a coverage action. That is so because an insurer cannot be found liable for such bad faith conduct unless it is first established that the insured was entitled to benefits under the UM policy. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). A UM insurer cannot be faulted for failing to settle a claim where the uninsured motorist is not liable to the insured for damages arising from the car accident. *Id.* Therefore, a section 624.155 action for bad faith failure to settle a UM claim does not accrue until there has been "a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages." *Id.*

Though a plaintiff asserting a section 624.155 claim must plead that she has obtained a determination of the extent of her damages, the plaintiff is not required to allege a specific amount of damages. *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 617–18 (Fla. 1994), *receded from in part on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995). There is also "no need to allege an award exceeding the policy limits to bring an action for insurer bad faith." *Id.* at 618. This is because "it is the establishment of the fact that such damages were incurred and not their precise amount which forms the basis for a subsequent first party cause of action for bad faith." *Clough v. Gov't Emps. Ins. Co.*, 636 So. 2d 127, 130 (Fla. Dist. Ct. App. 1994), *disapproved of in part on other grounds*, *Laforet*, 658 So. 2d at 62.

Accordingly, it is well established that a plaintiff may bring a section 624.155 action against a UM insurer without obtaining a precise determination of damages in the prior coverage action, and the amount of damages may be determined in the section 624.155 action. *Brookins v. Goodson*, 640 So. 2d 110, 113–15 (Fla. Dist. Ct. App. 1994), *disapproved of in part on other grounds*, *Laforet*, 658 So. 2d at 62;[2] *Clough*, 636 So. 2d at 130. Obtaining a verdict on the plaintiff's total damages in the underlying coverage action is only one of several methods of establishing the "extent of the plaintiff's damages" prerequisite.

*Brookins* controls this case. In *Brookins*, as here, the UM insurer tendered its policy limits before trial in the underlying coverage action, thus ending the coverage litigation. *See* 640 So. 2d at 112. In the subsequent section 624.155 failure-to-settle action, the trial court dismissed the case because the underlying coverage case was settled without a trial establishing the extent of the

---

[2] In *Laforet*, the Florida Supreme Court disapproved of *Brookins* only "to the extent [it] can be read as approving the retroactive application of section 627.727(10)." 658 So. 2d at 62. *Brookins* otherwise remains good law.

insured's damages. *Id.* at 111. The Fourth District Court of Appeal, in a decision authored by now-Justice Pariente of the Florida Supreme Court, reversed and held that "the resolution of the underlying underinsured motorist claim by payment of the policy limits does not preclude the insured from pursuing a first party bad faith claim against his insurer." *Id.*

The court explained that the purpose of the *Blanchard* requirements is to ensure that the insured has a valid claim against the insurer. *Id.* at 112. The amount of damages does not determine whether the insured has a section 624.155 claim, and the extent of damages need not be determined by litigation. *Id.* Thus, the UM insurer's payment of the policy limits "is the functional equivalent of an allegation that there has been a determination of the insured's damages" because it satisfies the requirement that the insured has a valid claim. *Id.* Thus, all that is required as a prerequisite for a section 624.155 failure-to-settle claim is that there was "a resolution of some kind in favor of the insured" on the coverage issue. *Id.* at 113. "By settling for the policy limits, the insurer has in effect conceded that the insured had a valid claim and the insured's damages have a minimum value set at the amount of the policy limits." *Id.* at 114. Such a settlement "resolves the underlying litigation for contractual uninsured motorist insurance benefits," but it "does not foreclose the bad faith claim." *Id.*

The Florida Supreme later extensively quoted *Brookins* with approval in *Vest v. Travelers Insurance Co.*, 753 So. 2d 1270, 1273 (Fla. 2000). "While the ultimate holding in *Vest* is not relevant for purposes of the instant motion, the fact that the Court reaffirmed the Fourth District's decision in *Brookins* suggests that payment of an insurance claim satisfies the prerequisite for a bad faith suit." *Plante v. USF&G Specialty Ins. Co.*, No. 03-23157CIV, 2004 WL 741382, at *4 (S.D. Fla. Mar. 2, 2004).

In *Vest*, the Florida Supreme Court also emphasized that the reason for the *Blanchard* requirements is that a section 624.155 failure-to-settle claim "is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay." *Id.* at 1275. Thus, the *Blanchard* prerequisites are properly read as a condition that the plaintiff establish entitlement to benefits under the policy before asserting a section 624.155 claim. This is evidenced by the *Vest* court's clarification of the *Blanchard* prerequisites in terms of liability for damages under the policy rather than the full amount of the plaintiff's damages caused by the uninsured tortfeasor. *See id.* at 1276 ("We continue to hold in accord with *Blanchard* that bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of *damages owed on the first-party insurance contract*." (emphasis added)).[3]

In this case, Plaintiffs have pled that GEICO tendered its policy limits. (DE 1-2 ¶¶ 16, 40–41.) Under *Brookins*, this suffices as meeting the elements of a determination of the existence of liability and the extent of the plaintiff's damages. This also strictly satisfies the *Blanchard* elements as stated in *Vest*. GEICO has admitted that it is liable for the full amount of "damages owed on the first-party insurance contract." *Vest*, 753 So. 2d at 1276. Plaintiffs need allege nothing more to satisfy *Blanchard*. Having sufficiently pled a section 624.155 claim, Plaintiffs may prove the full

---

[3] *Vest* did not change the *Blanchard* requirements. *Blanchard* itself must have referred to only damages recoverable under the policy because, at the time *Blanchard* was decided, insured's were not entitled to damages caused by the uninsured motorist in excess of the policy limits. *See McLeod v. Cont'l Ins. Co.*, 591 So. 2d 621, 625–26 (Fla. 1992). It was only after *Blanchard* and *McLeod* that, in direct response to *McLeod*, the Florida Legislature enacted section 627.727(10) to allow for recovery of excess judgments in section 624.155 actions in the UM context. *See Laforet*, 685 So. 2d. at 60–61 (describing development of section 627.727(10)). As such damages could not have been contemplated in *Blanchard*, it would be improper to read *Blanchard* as requiring that the damages in excess of UM policy limits be determined as a condition precedent to a section 624.155 claim.

amount of their damages in this case, including those exceeding the policy limits.

GEICO contends that when it moved for entry of judgment in the coverage action it never intended to "mislead or prejudice Plaintiffs." Rather, GEICO asserts the law changed after the entry of the judgment and its actions are "simply a reflection of the ever changing landscape of bad faith jurisprudence in Florida." (DE 20 at 2.) GEICO claims that in the coverage action it relied on *Safeco Insurance Co. of Illinois v. Fridman*, 117 So. 3d 16, 20 (Fla. Dist. Ct. App. 2013), *rev. granted*, 145 So. 3d 823 (Fla. 2014), when it maintained that entry of judgment would not bar a subsequent section 624.155 claim, but then two days after judgment the Fourth District Court of Appeal issued *GEICO General Insurance Co. v. Paton*, 150 So. 3d 804 (Fla. Dist. Ct. App. 2014), which GEICO claims changed the law. The Court rejects GEICO's argument.

In *Fridman*, the Fifth District Court of Appeal held that an insurer's tender of the policy limits and confession of judgment in a UM coverage action renders the issues in the case moot, thus prohibiting a court from allowing the case to proceed to trial on the full amount of the plaintiff's damages. 117 So. 3d at 18–20. In such a situation, *Fridman* holds, the trial court must enter the confessed judgment in favor of the insured and reserve jurisdiction only to award costs, prejudgment interest, and reasonable attorneys' fees if authorized by law. *Id.* at 20. Citing *Brookins*, the court explained that its holding did not create a procedure that would allow insurer's to bar section 624.155 claims. *Id.* at 20–21. Because "an insured is not required to obtain a jury verdict in excess of the applicable UM coverage as a condition precedent to bringing a first party bad faith action against the insurer," an insured "can seek the full measure of damages afforded by [section 627.727(10)] in a subsequent bad faith action." *Id.* (citing *Brookins*, 640 So. 2d 110; *Clough*, 636 So. 2d 127).

9

*Paton* addresses an entirely separate issue that is irrelevant to this case. In *Paton*, the Fourth District Court of Appeal held that a verdict in excess of the policy limits obtained in a UM coverage trial is conclusive evidence of the plaintiff's damages in a subsequent section 624.155 action. 150 So. 3d at 806. *Paton* does not state that such an excess verdict is the only way to satisfy the *Blanchard* prerequisites. It merely holds that a plaintiff is not required to prove her damages twice, once in the UM coverage action and again in the section 624.155 action. *Id.* at 807 ("Forcing retrial of a plaintiff's damages at a first party bad faith trial, as Geico urges, is such bad policy that we do not glean even a hint of its existence in any case the Supreme Court has decided in this area."). *Paton* simply has no applicability where no trial was held in the UM coverage action because the insurer confessed judgment prior to trial.

GEICO incorrectly reads *Paton* as conflicting with *Fridman* and holding that an insured must always prove the full amount of damages caused by the uninsured motorist in the underlying coverage action. But *Paton* is about the effect of a prior excess verdict *once obtained*, not whether such a verdict is required as an element of every section 624.155 action. Just because such a verdict, *if obtained*, is conclusive as to damages in the subsequent section 624.155 action, it does not follow that the absence of such a verdict bars the section 624.155 action. Obtaining a verdict on damages in the UM coverage action is *sufficient* to satisfy *Blanchard*, but it is not *necessary* where the "extent of damages" prerequisite is otherwise satisfied. *See, e.g.*, *Brookins*, 640 So. 2d at 112.

For the *Paton* court to have held otherwise, it would have had to overrule *Brookins*, another Fourth District Court of Appeal decision (which it could not do unless sitting *en banc*). *Paton* does not even mention *Brookins*. In fact, two weeks before *Paton*, the Fourth District Court of Appeal issued a unanimous, *en banc* decision relying heavily on *Brookins* and noting the Florida Supreme

Court's approval of that decision in *Vest*. *See Cammarata v. State Farm Florida Ins. Co.*, 152 So. 3d 606, 611–12 (Fla. Dist. Ct. App. 2014) (en banc) (per curiam). The *Paton* court was bound by *Brookins* and *Cammarata*. And regardless, it is doubtful that the judges who joined the *Cammarata* opinion, which relied on *Brookins*, would two weeks later issue a decision overruling *Brookins* without even mentioning it. Also, though the *Paton* court was not bound by the decision of a sister court of appeal, it is noteworthy that *Paton* does not mention *Fridman* either (which also relies on *Brookins*).

In sum, *Fridman* and *Paton* do not conflict. *Fridman* addresses the situation where a UM insurer tenders its limits in the coverage action prior to trial. *Paton* addresses the situation where, unlike here, a UM insurer does not tender its limits and instead proceeds to trial in the coverage action. Because there was no trial in the underlying coverage action in this case, *Paton* is inapposite here. *Brookins* is controlling. A section 624.155 claim ripens in satisfaction of *Blanchard* where, as here, the insurer tendered its limits in the prior coverage action.

### B. GEICO's Motion to Stay Pending Result in *Fridman*

In the alternative, GEICO moves to stay this action until the Florida Supreme Court issues a decision in *Fridman*, which it accepted jurisdiction to review. 145 So. 3d 823. While in *Fridman* the Florida Supreme Court may indeed discuss the elements of a section 624.155 failure-to-settle claim, controlling precedent exists on the issue before this Court. *See Brookins*, 640 So. 2d at 112. Where controlling circuit precedent exits on an issue before a district court, a grant of certiorari on the same issue by the United States Supreme Court does not justify a stay because certiorari grants do not change the law. *Speer v. Whole Food Mkt. Grp., Inc.*, No. 8:14-CV-3035-T-26TBM, 2015 WL 2061665, at *1 (M.D. Fla. Apr. 29, 2015); *Nicholas v. Nationwide Credit, Inc.*, No.

09-60736-CIV, 2010 WL 503071, at *4 (S.D. Fla. Feb. 8, 2010). There is no reason why the same principle does not apply in an analogous state-law context. *Cf. Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980) ("The decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court . . . .").

Regardless, the outcome of *Fridman* will likely have no effect on this case. The issue in *Fridman* is whether a plaintiff is entitled to proceed to trial in a coverage action after a defendant UM carrier makes a pretrial confession of judgment. That issue is not before this Court.[4]

### C. GEICO's Motion to Continue Trial and Stay Pretrial Deadlines

GEICO recently filed an additional motion seeking a continuance of the trial and a stay of remaining pretrial deadlines "pending the Court's issuance of an Order on GEICO's Motion to Dismiss or Stay." (DE 26 at 3.) As the Court has now ruled on GEICO's motion to dismiss or stay, GEICO's motion to stay pretrial deadlines pending such a ruling is moot. Furthermore, GEICO has not established good cause to continue the trial date. The Court appreciates, however, that certain discovery issues depended on how the Court would rule on GEICO's motion to dismiss. (*See* DE 23.) Therefore, while the Court denies the motion to stay pretrial deadlines and continue the trial date, it is willing to entertain a future motion to extend certain pretrial deadlines.

---

[4] *Brookins* also held that where, as here, an insurer agrees to pay the policy limits in the underlying coverage action and allow the insured to pursue the section 624.155 claim, "this would amount to an agreement or stipulation that the insurer waived the requirement that the extent of the insured's damages be determined by litigation as a prerequisite to a first party bad faith case." 640 So. 2d at 115. Therefore, even if the Florida Supreme Court goes beyond the question presented in *Fridman* and holds, contrary to *Vest* and *Brookins*, that an insured in a UM coverage action must obtain a verdict fixing *all* the damages caused by the uninsured motorist as a condition precedent to a section 624.155 claim, the outcome of this case would not change. Instead, the additional holding in *Brookins* as to waiver would control and lead to the same result.

## IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that GEICO's Motion to Dismiss or in the Alternative Motion to Stay (DE 13) is **DENIED**. It is further **ORDERED AND ADJUDGED** that GEICO's Motion to Continue Trial and Stay Remaining Pretrial Deadlines (DE 26) is **DENIED** as to the motion to continue trial and is **DENIED AS MOOT** as to the motion for a stay of pretrial deadlines.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 20th day of October, 2015.

_____
KENNETH A. MARRA
United States District Judge