UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-14005-CIV-MARRA

DEIRDRE LEVESQUE and TIMOTHY LEVESQUE,

    Plaintiffs,

vs.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

    Defendant.
_____/

**OPINION AND ORDER DENYING MOTION TO BIFURCATE TRIAL**

This matter is before the Court on Defendant Government Employees Insurance Company's ("GEICO") Motion to Bifurcate Trial (DE 31). For the following reasons, the motion is denied.

**I. Background and Procedural History**

On August 2, 2011, Plaintiff Deirdre Levesque was involved in an automobile accident with an uninsured motorist, leaving Levesque with significant injuries. (DE 1-2 ¶¶ 4–6, 8.) Defendant GEICO insured Levesque under a policy that provided $100,000 in uninsured motorist ("UM") coverage. (DE 1-2 ¶¶ 9, 11.) Because GEICO allegedly failed to tender its applicable UM coverage limits within 60 days of being served with a Civil Remedy Notice of Insurer Violation, Levesque and her husband, Plaintiff Timothy Levesque, sued GEICO in a state-court proceeding for damages under the policy (the "coverage action"). (DE 1-2 ¶¶ 12–16.) A trial was scheduled in the coverage action, which would have determined the full extent of Plaintiffs' damages caused by the uninsured motorist's alleged negligence.

1

Before the scheduled trial, GEICO moved the court for entry of a final judgment. (DE1-2 ¶ 40.) In its motion, GEICO argued that because it "admitted that Plaintiffs are entitled to judgment in the amount of the UM policy limits, there is no further justiciable controversy between the parties and final judgment must be entered." (DE 17-1 at 4.) In support of its motion for entry of a judgment, and in order to assuage any concerns the court might have about prejudicing a future claim for such damages, GEICO assured the court that under Florida law such a result "would in no way impede [an insured] from pursuing a bad faith claim against [a UM insurer], as a confessed judgment in the UM action would provide a sufficient basis for [an insured] to sue [its UM insurer] for bad faith." (DE 17-1 at 7.) GEICO explained to the state court that "the finder of fact in the subsequent lawsuit for bad faith" would be "entitled to determine the amount of the damages in that action." (DE 17-1 at 8.) Based on GEICO's motion, the state court entered a final judgment against GEICO in the amount of the $100,000 policy limits. (DE 1-2 ¶¶ 40–41.) Thus, GEICO deprived Plaintiffs of the ability to have the amount of damages they sustained in excess of the policy limits determined in the coverage action.

After obtaining the final judgment against GEICO in the coverage action, Plaintiffs filed this statutory "bad-faith" action against GEICO under section 624.155, Florida statutes. (DE 1-2.) Among other damages, Plaintiffs seek the total amount of damages sustained as a result of the August 2, 2011 car accident, including any amount in excess of the policy limits. (DE 1-2 at 17–18.) Plaintiffs assert that the full value of their claims "greatly exceeded" the $100,000 policy limits. (DE 1-2 ¶ 11.)

GEICO previously moved to dismiss, arguing that Plaintiffs' section 624.155 action could not be maintained because, according to GEICO, as a condition precedent to such an action

"Plaintiffs [we]re required to establish the total amount of damages in the underlying suit for UM benefits." (DE 13 at 2.) As noted *supra*, in the coverage action GEICO succeeded in arguing that Plaintiffs could not obtain a determination of their total damages because "no further justiciable controversy" existed once GEICO admitted it was liable for the policy limits, and that instead Plaintiffs had to prove their damages in a subsequent section 624.155 action.[1] With the coverage case closed, GEICO argued in this case that Plaintiffs could not bring their section 624.155 claim because they should have obtained a determination of their damages in the prior coverage action. The Court rejected GEICO's contention and denied its motion to dismiss. (DE 28.) The Court held that "Plaintiffs may prove the full amount of damages in this case, including those exceeding the policy limits." (*Id.* at 8–9.)

Shortly afterward, GEICO moved to bifurcate the trial on the issues of damages and "bad faith" liability. (DE 31.) GEICO seeks to have damages tried prior to a trial on liability.

## II. Legal Standard

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Whether to bifurcate a trial is subject to the district court's discretion. *See Brown v. Toscano*, 630 F. Supp. 2d 1342, 1345–46 (S.D. Fla. 2008). Merely because issues may be bifurcated does not mean that they should be bifurcated. *Id.* at 1346. "[T]he moving party bears

---

[1] The Florida Supreme Court's recent decision in *Fridman v. Safeco Insurance Co. of Illinois*, __ So. 3d __, 2016 WL 743258 (Fla. 2016), which was decided after the state court closed the coverage action, makes clear that GEICO and the state court were in fact wrong to conclude that GEICO's confession of judgment for the policy limits rendered the state-court case moot. *Id.* at *9 ("Nothing in our precedent suggests that the eventual tendering of the policy limits renders the UM case moot.").

the burden of demonstrating the benefits of bifurcation." *1550 Brickell Assocs. v. Q.B.E. Ins. Corp.*, No. 07-22283-CIV, 2010 WL 4683889, at *2 (S.D. Fla. Nov. 10, 2010). Bifurcation is the exception rather than the rule. *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1323–24 (5th Cir. 1976) ("[W]e have cautioned that separation of issues is not the usual course that should be followed . . . .").

### III. Discussion

GEICO argues that bifurcation is necessary "to simplify the issues presented to the jury, avoid confusion, irreparable harm and undue prejudice to GEICO, and to prevent improper disclosure of work-product materials." GEICO also filed the Florida Supreme Court's recent decision in *Fridman v. Safeco Ins. Co. of Illinois*, __ So. 3d __, 2016 WL 743258 (Fla. 2016), as supplemental authority. The Court addresses each basis in turn.

#### A. *Fridman v. Safeco*

Though GEICO does not explain how *Fridman* supports its motion, the Court assumes that GEICO filed it as supplemental authority for the proposition that, contrary to the Court's opinion in its order denying GEICO's prior motion to dismiss, Florida law requires the specific amount of Plaintiff's full extent of damages to be determined prior to a determination of GEICO's liability for bad faith. The Court disagrees that *Fridman* supports GEICO's motion.

Under Florida law, a first-party bad-faith action "is premature until there is a determination of liability and extent of damages *owed on the first-party insurance contract*." *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) (emphasis added). GEICO argued in its motion to dismiss that the "extent of damages" prerequisite required Plaintiffs to obtain a prior determination of the full extent of their damages, including those above the policy limits, before pursuing a first-party

4

bad-faith claim.

As explained in the Court's order denying GEICO's motion to dismiss, the argument that the "extent of damages" prerequisite refers to a prior determination of the full extent of the insured's damages, including those suffered above the policy limits, is based on a distorted and anachronistic interpretation of *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 (Fla. 1991). In *Blanchard*, the Florida Supreme Court first held that a section 624.155 action for a bad-faith failure to settle a UM claim does not accrue until there has been "a determination of the existence of liability on the part of the uninsured tortfeasor and the extent of the plaintiff's damages." *Id.* at 1291. The *Blanchard* court's reference to "the extent of the plaintiff's damages" was made in the context of discussing damages recoverable under the policy.[2] *Id.*

Also, the *Blanchard* court must have referred only to damages recoverable under the policy (i.e., contractual damages) because, at the time *Blanchard* was decided, insureds were not entitled to damages caused by the uninsured motorist in excess of the policy limits. *See McLeod v. Cont'l Ins. Co.*, 591 So. 2d 621, 625–26 (Fla. 1992). It was only after *Blanchard* and *McLeod* that, in direct response to *McLeod*, the Florida Legislature enacted section 627.727(10) to allow for recovery of excess judgments in section 624.155 actions in the UM context. *See Laforet*, 685 So. 2d. at 60–61 (describing development of section 627.727(10), Florida statutes). As such damages were not contemplated in *Blanchard*, it would be improper to read *Blanchard* as requiring that the damages

---

[2] While the reference to liability was phrased as being the uninsured tortfeasor's liability, this was only because the tortfeasor's liability was coextensive with coverage, i.e., the UM carrier's contractual liability. *See Blanchard*, 575 So. 2d at 1291 ("If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim."). The Court's entire discussion centered on proving that the insured had a valid claim for benefits before proceeding with a section 624.155 failure-to-settle action.

5

in excess of UM policy limits be determined as a condition precedent to a section 624.155 claim.

Later Florida Supreme Court decisions make clear that the "extent of damages" requirement refers to only damages under the policy, and not extra-contractual damages above the policy limits. *See Vest*, 753 So. 2d at 1276 ("We continue to hold in accord with *Blanchard* that bringing a cause of action in court for violation of section 624.155(1)(b)1 is premature until there is a determination of liability and extent of damages *owed on the first-party insurance contract*." (emphasis added)). Furthermore, a requirement that an insured obtain a determination of damages in excess of the policy limits prior to pursuing a first-party bad-faith claim would be completely divorced from the rationale of the *Blanchard* requirements: ensuring that the insured's bad-faith claim is predicated on an insurer's failure to pay damages that are actually covered under the policy. *See Blanchard*, 575 So. 2d at 1291 ("Thus, an insured's underlying first-party action *for insurance benefits* against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue. It follows that an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation *for the contractual uninsured motorist insurance benefits*." (emphasis added)).

The Court's denial of GEICO's motion to dismiss was primarily based on *Brookins v. Goodson*, 640 So. 2d 110 (Fla. Dist. Ct. App. 1994), *disapproved of in part on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 62 (Fla. 1995).[3] As in this case, in *Brookins* the insurer's payment of the policy limits before trial in the UM coverage action prevented the insured from proving the full extent of his damages (i.e., damages suffered in excess of the policy limits)

---

[3] *Laforet* disapproved of *Brookins* only "to the extent [it] can be read as approving the retroactive application of section 627.727(10)." 658 So. 2d at 62. *Brookins* otherwise remains good law.

6

before pursuing his bad-faith claim. *Id.* at 111–12. Rejecting an argument similar to GEICO's in this case, the *Brookins* court held that "the resolution of the underlying underinsured motorist claim by payment of the policy limits does not preclude the insured from pursuing a first party bad faith claim against his insurer." 640 So. 2d at 111.

The holding in *Brookins* is based on two independent rationales. The first rationale is that the element of a section 624.155 failure-to-settle action that there be a prior determination of the insured's damages refers only to a resolution of the underlying claim for UM benefits, does not require a determination of the amount of the insured's extra-contractual damages, and is satisfied by the insurer's payment of the policy limits alone. *Id.* at 112–14. By settling for the policy limits, the insurer has resolved the underlying claim for UM benefits and "has in effect conceded that the insured had a valid claim and the insured's damages have a minimum value set at the amount of the policy limits." *Id.* at 114. The second rationale is that the insurer's agreement to pay the policy limits without prejudice to the insured's pursuit of a bad-faith claim was essentially a waiver of the "extent of damages" prerequisite. *Id.* at 115. The Court relied on both rationales in its order denying GEICO's motion to dismiss. (DE 28 at 28 at 6–7, 12 n.4.)

Several months after the Court denied GEICO's motion to dismiss, the Florida Supreme Court decided *Fridman*, which holds that an insured is *entitled* to a determination of the full extent of her damages in a prior UM action before litigating a section 624.155 failure-to-settle action. *Fridman*, 2016 WL 743258, at *1. Therefore, under *Fridman*, a trial court should not dismiss a UM coverage case as moot when an insurer confesses judgment for the policy limits because the insured is still entitled to prove her excess damages in a trial in the UM coverage action, with that verdict then binding in the subsequent section 624.155 action. *Id.* at *9–10.

7

Certain statements in *Fridman* could be read to support the proposition that the "extent of damages" prerequisite *requires* a determination of the *full extent* of the insured's damages. This would be contrary to the first rationale of the holding in *Brookins* as well as other Florida Supreme Court decisions discussed in the Court's order denying GEICO's motion to dismiss. The *Fridman* court made clear, however, that the issue before it was only the entitlement to prove the full extent of damages rather than a requirement to do so. *Id.* at *7 ("While the Fifth District held that Fridman did not *need* to obtain a jury verdict in excess of the UM policy limits in the UM case in order to subsequently file a first-party bad faith action, the pertinent question is whether the insured is *entitled* to that determination.").

Unless and until the Florida Supreme Court or a Florida District Court of Appeal holds otherwise, the decision in *Fridman* has no effect on *Brookins*. *Fridman* did not address or even cite *Brookins*, and the issue in *Brookins* was not before the *Fridman* court. Florida district court of appeal decisions, such as *Brookins*, "represent the law of Florida unless and until they are overruled by" the Florida Supreme Court. *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (quoting *Stanfill v. State*, 384 So.2d 141, 143 (Fla. 1980)). It is also highly unlikely that any statement in *Fridman* should be read as conflicting with *Brookins* given that Justice Pariente, who authored *Fridman*, authored *Brookins* when she was a judge on the Fourth District Court of Appeal.[4] Also, the Florida Supreme

---

[4] Writing for the Fourth District Court of Appeal in *Brookins*, then-Judge Pariente stated that *Blanchard* "required *resolution of the underlying claim for uninsured motorist benefits* before a bad faith claim accrued," that *Blanchard* and its progeny did not require that the prior determination of damages "be in excess of the policy limits," that "an award in excess of the policy limits is not a prerequisite to a first party bad faith claim," and that "the payment of the policy limits by the insurer here is the functional equivalent of an allegation that there has been a determination of the insured's damages." 640 So. 2d at 112–14 (emphasis added). It is doubtful that in *Fridman* Justice Pariente sweepingly invalidated her prior statements without citing *Brookins* once.

8

Court explicitly noted, and did not disturb, the lower court's holding that the insured "did not *need* to obtain a jury verdict in excess of the UM policy limits in the UM case in order to subsequently file a first-party bad faith action." *Fridman*, 2016 WL 743258, at *7. As this Court observed in its denial of GEICO's motion to dismiss, that portion of the lower court's holding in *Fridman* expressly relied on *Brookins*. (DE 28 at 9.)

In any event, to the extent any statement in *Fridman* casts doubt on the first rationale in *Brookins*, the second rationale is undisturbed. In the Court's order denying GEICO's motion to dismiss, the Court expressly noted that *Fridman* had the potential to conflict with the first rationale in *Brookins* and explained that, even if the first rationale was called into question, the second, waiver-based rationale would independently lead to the same result in this case. (DE 12 n.4.) So even if *Fridman* conflicts with the first rationale in *Brookins*, under the facts of this case Plaintiffs would still not be required to prove the full extent of their damages prior to proving GEICO's liability for bad faith. Thus, *Fridman* provides no basis for bifurcating the issues of extra-contractual damages and bad-faith liability in this case or otherwise requiring that the full extent of Plaintiffs' extra-contractual damages be determined before Plaintiffs can prove bad-faith liability.

**B. Simplification of the Issues and Avoidance of Confusion**

GEICO argues that bifurcation of liability and damages is necessary to simplify the issues for the jury and avoid confusion. GEICO contends that the issue of the amount of damages Plaintiffs suffered is complicated by itself and that "the complicated nature of a bad faith action presents an inherently complex question for the jury as well." (DE 31.) GEICO's argument regarding the alleged complexity of the damages issue is based on the facts that Plaintiffs have listed 35 witnesses who have been involved in Deirdre Levesque's treatment and that Plaintiffs have a claim for mental and

9

emotional damages, which will present an issue of causation.

The Court rejects these arguments. The number of witnesses alone does not render an issue complex, and it is not even clear that Plaintiffs will call all of these witnesses. Furthermore, GEICO overstates the complexity of determining the causation element for Plaintiffs' claim for mental and emotional damages. Regarding the bad-faith claim, it presents a factual question of whether GEICO failed "to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward [its insured] and with due regard for [her] interests." *Fridman*, 2016 WL 743258, at *7 n.3 (quoting Fla. Std. Jury Instr. (Civ.) 404.4). The Court disagrees that this question is so "inherently complex" as to require bifurcation of liability and damages. GEICO argues that the bad-faith claim is complex because it will require expert witnesses and "both parties will present several witnesses in order to recount the events that transpired." (DE 31 at 6.) This description could apply to numerous claims. Also, even if bad-faith claims are complex, that alone does not prove there is a risk that the jury will confuse the liability and damages issues in this case.

The cases GEICO cites, none of which are bad-faith cases (or even insurance-related cases at all), provide no support for its position. In *Fisher v. Miami-Dade County*, the Court bifurcated the trial for a § 1983 action between the claims against the individual defendants and the *Monell*[5] claim against the county. No. 14-CV-22636, 2015 WL 5148888, at *1 (S.D. Fla. Aug. 31, 2015). In *Fisher*, the *Monell* claim "involve[d] the most complex, time consuming, and expensive issues" and its success was dependent on the outcome of the first trial against the individual defendants. *Id.* Bifurcation made sense because the outcome of the first trial had the potential to obviate the need for discovery and trial as to the second, more complex claim. The same was true in *Gafen v. Tim-Bar*

---

[5] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

*Corp.*, where the court noted that "resolution of all questions regarding liability may allow the parties to reach a settlement without the need to proceed to a damages trial." *Gafen v. Tim-Bar Corp.*, No. 01-7626-CIV, 2002 WL 34731041, at *1 (S.D. Fla. Oct. 21, 2002), *order clarified*, 2002 WL 34731042 (S.D. Fla. Nov. 6, 2002). Here, GEICO seeks to bifurcate issues that are part of the same claim, and in an order that would not obviate the need for a second trial. GEICO seeks to try the issue of damages before the issue of liability, which would serve no purpose in terms of saving the time and resources of the Court or the parties.[6]

In *Harrington v. Cleburne County Board of Education*, an employment discrimination case, the Eleventh Circuit stated that the plaintiff's assertion of distinct claims for sex and race discrimination sufficed to permit the district court to try the claims separately based on its concern for clarifying the issues to be tried. 251 F.3d 935, 938 (11th Cir. 2001) (per curiam). Trying liability and damages together in this case does not present the same risk of confusion of the issues as simultaneously trying sex and race discrimination claims brought by the same plaintiff. Also, the *Harrington* court spoke only in terms of permissible, not mandatory, language. Thus, while it was within the court's discretion to order separate trials, it was not required to do. Indeed, the *Harrington* court noted that the district court's reason for ordering separate trials was only "colorable (even if not compelling)." *Id.* Accordingly, the Court rejects GEICO's arguments that bifurcation in this case

---

[6] GEICO claims that the trial will now take three days longer than initially expected, but a single ten-day trial is still more efficient than two trials of the same length. Also, splitting the trials would likely result in a total of more trial days given that at least the background information, if not other facts, would need to be presented twice and the proceedings would involve two jury selections rather than one. GEICO in fact concedes that at least two witnesses will overlap. (DE 31 at 6.) In conclusory fashion, GEICO also argues that bifurcation will "promote convenience and efficiency, [sic] because it will allow the parties and the Court to resolve at least one of the issues to be tried." (DE 31 at 4.) GEICO fails to explain how resolving only one issue to be tried and saving another for a later trial is more convenient and efficient than resolving all the issues at once.

would avoid confusing the jury or be more economical.

### C. Undue Prejudice

The Court also rejects GEICO's argument that proof of bad-faith damages would be unduly prejudicial if admitted in the same trial determining bad-faith liability. Distilled, GEICO's argument is that the evidence of Plaintiffs' high amount of damages will evoke sympathy from the jury, which will then improperly find bad-faith liability based on an emotional response regardless of whether the evidence sufficiently establishes liability. The jury will be instructed, however, as to the proper basis on which to find liability. "Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions." *United States v. Stone*, 9 F.3d 934, 938 (11th Cir. 1993).

While in some cases the risk of emotion improperly influencing a verdict might necessitate bifurcation, Plaintiffs' injuries arising out of a car accident caused by a third party are not so inflammatory as to require bifurcation here. This case "is no different than any other case in which something bad happens to someone," and GEICO offers "no specific reason why this case is different from the general rule that all aspects of the case should be tried together." *Christie ex rel. estate of Christie v. Scott*, No. 2:10-CV-420, 2013 WL 618089, at *2 (M.D. Fla. Jan. 17, 2013). GEICO also offers no reason a curative instruction to the jury would not adequately address its concerns in this case. Here, there is even less of a risk of undue prejudice than in an typical case because the excess damages arising from the car accident were caused by a third-party tortfeasor rather than GEICO, and they are only recoverable against GEICO based on a statute. *See* Fla. Stat. § 627.727(10) (2015) ("The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor."). If evidence of high damages alone created undue prejudice that required

bifurcation of liability and damages, then bifurcation would be the rule rather than the exception.

Also, as most recently recognized in *Fridman*, and as GEICO contends is the "typical case," liability and damages caused by the uninsured motorist, a third-party tortfeasor, are tried together in the UM coverage action. If evidence of the insured's damages, including those in excess of the policy limits, is not unduly prejudicial in a case where liability for causing the car accident is simultaneously determined, it is difficult to see how it would be unduly prejudicial in this case, where the potential liability is for mishandling an insurance claim rather than for causing the car accident. Thus, bifurcation is not necessary to prevent undue prejudice to GEICO.

Bifurcating this case, on the other hand, would result in prejudice. A piecemeal approach would serve only to delay the resolution of this case with no benefit to outweigh such a delay. Such a delay would needlessly prejudice Plaintiffs. *See Brown*, 630 F. Supp. 2d at 1347.

**D. Disclosure of Work Product**

GEICO's final argument is that bifurcation is necessary to prevent disclosure of documents in its claim file that GEICO asserts are protected from disclosure under the work-product doctrine. GEICO argues that Florida law requires a prior determination of extra-contractual damages before an insurer's claim file becomes discoverable.[7] While GEICO cites two federal cases for the general proposition that information in an insurer's claim file prepared in anticipation of litigation constitutes

---

[7] The cases GEICO cites suggest that GEICO again confuses a requirement to merely obtain a determination of damages under the policy as a requirement to obtain a prior determination of extra-contractual damages. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 638 (Fla. Dist. Ct. App. 2008) ("[W]e quash the order requiring State Farm to produce the requested documents until there is a determination of liability and the extent of *damages owed to O'Hearn under her UM policy*." (emphasis added)); *GEICO Gen. Ins. Co. v. Hoy*, 927 So. 2d 122, 125 (Fla. Dist. Ct. App. 2006) ("When a litigant files claims for both coverage and bad faith in the same action, the insurer's claim file is not discoverable until *the issue of coverage* has been resolved." (emphasis added)). Nevertheless, the Court need not resolve this issue of state law.

protected work product, GEICO's entire argument is based on GEICO's interpretation of Florida law. GEICO offers no explanation of how the federal standard applies in this case or how that standard compels bifurcation of the trial.

Unlike questions of privilege in diversity actions, questions of the scope of the work-product protection are determined under federal law. *See MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 628–29 (S.D. Fla. 2013) (discussing differences in applicability of work-product protection to insurer's claim file under federal and Florida law); *1550 Brickell Assocs. v. Q.B.E. Ins. Co.*, 253 F.R.D. 697, 698–700 (S.D. Fla. 2008) (applying federal law to insurer's work-product claim and Florida law to insurer's assertion of attorney-client privilege); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698–701 (S.D. Fla. 2007) (rejecting insurer's argument that Florida law, rather than federal law, governs applicability of work-product protection). GEICO's inapposite argument based on state law cannot satisfy its burden of showing the necessity of bifurcation.[8]

### IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that GEICO's Motion to Bifurcate Trial (DE 31) is **DENIED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of March, 2016.

                                              KENNETH A. MARRA
                                              United States District Judge

---

[8] The Court expresses no opinion on whether any of GEICO's documents in its claim file are entitled to federal work-product protection.